# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. KAIROS SCIENTIA, INC., | ) ) ) | CASE NO.5:10CV383 |
| Relator, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) ) ) | MEMORANDUM OPINION & ORDER |
| ZINSSER COMPANY nka Rust-Oleum Corporation, | ) ) ) ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of Defendant Zinsser Company nka Rust-Oleum Corporation (Defendant or Rust-Oleum) to transfer venue. (Doc. No. 15.) For the reasons that follow, Rust-Oleum's motion is GRANTED, and this case is TRANSFERRED to the United States District Court for the Northern District of Illinois.

**Background**

Rust-Oleum is an Illinois corporation with its headquarters in Vernon Hills, Illinois. (Doc. No. 15-2, Declaration of Kurt Hardy at ¶ 3.) The named defendant, Zinsser Company, was a New Jersey corporation with its headquarters in Somerset, New Jersey. On December 31, 2008, Zinsser Company was merged into Rust-Oleum. (*Id*. at ¶ 4.)

Plaintiff-Relator Kairos Scientia, Inc. (Relator or Kairos) is an Ohio corporation, with its principal place of business in Stow, Ohio. (Doc. No. 1, Compl. at ¶ 4.) Kairos was incorporated on February 3, 2010, three weeks prior to the filing of this

case (Doc. No. 15-1, Ex. C, State of Ohio Certificate for Kairos), and presumably was formed for the purpose of litigating violations of the false marking statute.

On February 21, 2010, Kairos filed the present *qui tam* lawsuit alleging that Zinsser (nka Rust-Oleum) violated the provisions of the false marking statute, 35 U.S.C. § 292, by marking its Paper Tiger products with U.S. Patent No. 4,502,223, and by marking its DIF Wall Paper Stripper products with U.S. Patent Nos. 4,067,773 and 4,092,175, after the expiration of these patents. Kairos further alleges that Zinsser improperly advertises JOMAX cleaner products as "patented" in the absence of a patent whose claims cover those products. (Doc. No. 1, Compl. at ¶¶ 8-25.)

Rust-Oleum now moves to transfer this action pursuant to 28 U.S.C. § 1404(a). In particular, Rust-Oleum requests that this matter be transferred to the Northern District of Illinois, or, alternatively, to the District of New Jersey.

**Law and Analysis**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A decision to transfer under § 1404(a) lies within the discretion of the district court. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 31-33 (1955); *Duha v. Aqrium, Inc.*, 448 F.3d 867, 886 (6th Cir. 2006) (noting that the district court has broad discretion to grant or deny a motion to transfer). When considering whether a change of venue is warranted under § 1404(a), the district court

must "weigh case-specific factors, public-interest factors and private concerns."[1] *Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 537-38 (6th Cir. 2002). "Private factors include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; the possibility of inspecting the premises, if appropriate; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Sirak v. J.P. Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 94328, *3 (N.D. Ohio Nov. 5, 2008) (numerals and citations omitted). "Public factors include: administrative difficulties of courts with congested dockets; the burden of jury duty on members of a community with no connection to the litigation; the local interest of having localized controversies decided at home; and the appropriateness of having diversity cases tried in a forum which is familiar with the governing law." *Id.*

No one factor is dispositive; rather transfer is appropriate if the balance of these factors weighs "strongly" in favor of transfer. *Picker Int'l, Inc. v. Travelers Indemnity Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998). "A Court need not extensively discuss each of the [aforementioned] factors, but should instead focus its analysis on those factors that are particularly relevant to a given transfer determination." *Krawec v. Allegany Co-Op Insurance Co.*, 2009 WL 1974413, *4 (N.D. Ohio July 7, 2009) (citations omitted). As the party requesting the transfer, Rust-Oleum bears the ultimate

---

[1] Case-specific factors include, but are not limited to: the nature of the suit; the place of events involved; relative ease of access to sources of proof; nature and materiality of testimony to be elicited from witnesses who must be transported; and the residence of the parties. *Sirak v. J.P. Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 94328, *3 (N.D. Ohio Nov. 5, 2008).

burden of demonstrating that transfer is warranted. *See Wm. R. Hague, Inc. v. Sandburg*, 468 F. Supp. 2d 952, 962 (S.D. Ohio 2006).

Transfer under 28 U.S.C. 1404(a) is only appropriate, however, if the action could have properly been brought in the transferee venue. 28 U.S.C. § 1404(a). Kairos does not dispute that this case could have been brought in the Northern District of Illinois or the District of New Jersey. Both courts have subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1138(a), as this is a false marking case arising under federal statutory law. Venue would also be proper in either district because Defendant is an Illinois corporation with its principal place of business in Vernon Hills, Illinois, 28 U.S.C. § 1391(b)(1), and, as will be shown below, a substantial part of the events giving rise to the litigation took place in Illinois and New Jersey. § 1391(b)(2). Having determined that jurisdiction and venue are proper in either proposed district, the Court proceeds to weigh the interests of convenience and justice to determine whether transfer is appropriate.

1. **Relator's Choice of Forum**

Ordinarily, substantial weight is given to the plaintiff's choice of forum, *U.S. v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 887-88 (N.D. Ohio 1999), and that choice should not be disturbed unless the balance of the § 1404(a) analysis weighs strongly in favor of transfer. *Picker Int'l*, 35 F. Supp. 2d at 573. However, the plaintiff's chose is not dispositive, *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998), and will not defeat a well-founded motion for change of venue. *Audi AG & Volkswagen of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 750 (E.D. Mich. 2004). "While a plaintiff's choice of forum is generally entitled to substantial weight, that choice

4

is given less consideration if the operative events giving rise to the lawsuit took place in a forum other than that chosen by the plaintiff." *Webb v. United States*, 2007 WL 4270660, *1 (N.D. Ohio Nov. 30, 2007) (citing *Roberts Metals Inc. v. Florida Props. Mktg. Group, Inc.*, 138 F.R.D. 89, 91-92 (N.D. Ohio 1991)). *See Phelps v. United States*, 2008 WL 5705574, *2 (N.D. Ohio Feb. 19, 2008). As will be shown below, because the vast majority of the operative facts giving rise to the lawsuit took place outside of Ohio, Kairos's choice is entitled to less deference.

Moreover, courts have routinely given less weight to a plaintiff's choice of forum in *qui tam* actions because the real party in interest is the United States. *See San Francisco Technology, Inc v. The Glad Products Co.*, 2010 WL 2943537, *7 (N.D. Cal. July 26, 2010) (collecting cases); *FLFMC, LLC v. Ohio Art Co.*, 2010 WL 3155160, *2 (W.D. Pa. July 30, 2010); *Zojo Solutions, Inc. v. Leviton Mfg. Co., Inc.*, 2010 U.S. Dist. LEXIS 112370, *3 (N.D. Ill. Oct. 20, 2010). Indeed, district courts within the Sixth Circuit have recently followed suit. *See, e.g., Just Intellectuals, PLLC v. Clorox Co.*, 2010 U.S. Dist. LEXIS 130900, *11 (E.D. Mich. Dec. 10, 2010); *Unique Prods. Solutions, Ltd. v. Otis Products, Inc.*, Case No. 5:10CV1471, *4 (N.D. Ohio Sept. 22, 2010).

Kairos does not seriously challenge the weight of persuasive authority discounting the importance of a plaintiff's forum choice in *qui tam* actions. Rather, it suggests that while "substantial" weight might not be appropriate in these types of actions, the weight given should not be reduced to "little" as Defendant suggests. (Doc. No. 17 at 10.) The Court agrees that some weight should still be afforded a plaintiff's forum choice in *qui tam* actions. *See Just Intellectuals*, 2010 U.S. Dist. LEXIS 130900, at

5

*11 ("the Court must still give some deference to plaintiff's choice forum"). Nonetheless, courts have heavily discounted a plaintiff's forum choice for such actions, and this Court, likewise, finds it appropriate to afford Relator's forum selection little weight. *See Seely v. Cumberland Packing Corp.*, 2010 U.S. Dist. LEXIS 137625, *8 (N.D. Cal. Dec. 20, 2010) ("significant authority holds that the forum choice of a *qui tam* plaintiff […] deserves little deference"); *Lightspeed Aviation, Inc. v. Bose Corp.*, 2010 U.S. Dist. LEXIS 106607, *5 (D. Or. Sept. 30, 2010) (noting "courts have afforded a [*qui tam*] plaintiff's choice of forum far less weight"); *United States v. First Nat'l Bank of Boston*, 625 F. Supp. 591, 594 (D.N.H. 1985) (affording plaintiff's choice "relatively little weight" in *qui tam* actions). The Court finds, therefore, that this factor weighs only slightly in favor of venue in this judicial district. *See, e.g., Just Intellectuals*, 2010 U.S. Dist. LEXIS 130900, at *11.

  2. **Situs of Material Events**

    The false-marking statute provides that any person may bring an action against "[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented for the purpose of deceiving the public[.]" 35 U.S.C. § 292(a). "Because [§ 292] requires that the false marker act 'for purpose of deceiving the public,' a purpose of deceit, rather than simple knowledge that a statement is false, is required." *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010). "[T]he markings on the concerned products and [d]efendant['s] intention with respect to marking the products with expired patents are the central material fact that gives rise to [the] claim for relief." *San Francisco Tech.*, 2010 WL 294357, at *9. *See Zojo Solutions*, 2010 U.S. Dist. LEXIS 112370, at *4.

6

Defendant has presented undisputed evidence that most if not all of the events relevant to Kairos's allegations of false marking, including the manufacturing, packaging, and advertising for the products in question, occurred in either Illinois or New Jersey. Rust-Oleum presently employs approximately 220 individuals at its Vernon Hills, Illinois headquarters. (Hardy Decl. at ¶ 6.) It employs approximately 134 individuals at its New Jersey facilities. (*Id.* at ¶ 7.) The DIF Wall Paper Stripper and JOMAX products are manufactured and packaged by Defendant at its Newark, New Jersey facility. (*Id.* at ¶ 15.) The Paper Tiger products are manufactured by a third party in New Zealand and packaged by a third party in New Jersey (*Id.* at ¶ 16.) Defendant has no facility located in Ohio. (*Id.* at ¶ 21.)

All of Defendant's marketing and advertising functions have been integrated at the Vernon Hills headquarters. (*Id.* at ¶ 8.) In addition, all Zinsser-based management and financial functions moved to Rust-Oleum's headquarters following the merger in 2008. (*Id.* at ¶ 5.) In addition, all management-level employees who possess knowledge regarding Defendant's decisions relating to the marking, packaging, and advertising of the products in question work either at Defendant's headquarters in Illinois or in New Jersey. (Doc. No. 15-1 at 3, Defendant's Amended Initial Disclosures.)

Kairos argues that "[e]ven if the stamping and affixing of the patents occurred in either the Northern District of Illinois or the District of New Jersey, this fact is irrelevant under the latest patent statute […]." (Doc. No. 17 at 10.) There is nothing in

the language of 35 U.S.C. § 292, however, that would support Kairos's contention.[2] Rather, it is clear that facts relating to the marking of the products in question are "the central material facts" that give rise to Plaintiff's cause of action.[3] *Zojo Solutions*, 2010 U.S. Dist. LEXIS 112370, at *4. *See San Francisco Tech.*, 2010 WL 294357, at * 9 (the location of the manufacturing and packaging of the products, as well as the place where the decision to affix the allegedly expired patents occurred, were "central material facts" that gave rise to Plaintiff's marking claim). *See, e.g., Seely*, 2010 U.S. Dist. LEXIS 137625, at *15 (applying similar facts to support transfer, emphasizing that most or all of the decisions related to patent marking occurred outside the district court's judicial district); *Just Intellectuals*, 2010 U.S. Dist. LEXIS 130900, at *9 (approving transfer, noting that product packaging design, marketing, and advertising decisions took place outside the district court's judicial district).

Kairos underscores the fact that both Rust-Oleum and Zinsser are subsidiaries of RPM International, Inc., a corporation based in Medina, Ohio. ( Doc. No. 17, Ex. 2.) It further notes that Zinsser's articles of incorporation filed with the Secretary of State of Ohio indicate that Zinsser Brands Company is a foreign corporation doing business in Ohio for the purpose of "holding, management and quality control of

---

[2] The fact that § 292 provides for a penalty for "every such offense" of marking does not mean that the initial decision to mark a series of products is irrelevant for purposes of determining the superior venue on a motion to transfer.

[3] To the extent that Kairos is relying on the Federal Circuit's decision in *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009), to support his claim, its attempt is in vain. In *Bon Tool*, the Supreme Court found that the language "for every offense," relating to the penalties that could be assessed, referred to each product that was marked, as opposed to the initial decision to mark. *Id.* at 1303. *Bon Tool* did not, however, suggest that the decision to mark was irrelevant to the question of superior venue, inasmuch as it did not even involve a motion to change venue under 28 U.S.C. § 1404(a). *See Zojo*, 2010 U.S. Dist. LEXIS 112370, at *5 (rejecting a similar argument, noting that "the decision [in *Bon Tool*] had nothing to do with venue or the situs of material events in a false-marking case").

intellectual property and trademarks." (*Id*.) It argues that, because "the control and management of intellectual property that is at the heart of this dispute, occurred right here in the Northern District of Ohio; on Pearl Road in Medina, Ohio to be exact [,]" Ohio has a significant connection to the relevant events at issue in this action. (Doc. No. 17 at 7.)

The location of the non-party parent corporation, RPM, or a non-party holding company, Zinsser Brands Company, are nothing more than red herrings. Kairos can point to no evidence that any of the decisions relating to the marking of the products in question occurred in Ohio, or that any employees or principals of these other corporations were involved in any of these crucial decisions. In contrast, Defendant offers uncontested evidence that neither Zinsser Brands Company nor RPM International, Inc. has ever owned the patents at issue in this case, has ever controlled or managed the patents at issue in this case, is not and has never been involved in the day-to-day business operations of the merged Zinsser Company, and is not knowledgeable concerning the patent markings at issue in this case.[4] (Doc. No. 18, Ex. 2, Declaration of Michael Murphy at ¶¶ 2-5.) Further, it is clear from the record that Rust-Oleum is the successor-in-interest to the entity Zinsser Company, the named defendant in this action, which owned the patents at issue in this case.[5] (Doc. No. 18, Ex. B, '773 and '175 Patents; Ex. C, Assignment of Patent No. 4,502,223.)

---

[4] In fact, operating decisions for the merged Zinsser business "are and always have been made at the operating company level, and not at the ultimate parent holding company level." (Murphy Decl. at ¶ 4.)
[5] The '773, '223 and '175 patents were assigned to William Zinsser & Co., the operating company then responsible for Zinsser brand products. (*See* Exs. B and C.) Zinsser Company was merged into Rust-Oleum effective December 31, 2008. (Doc. No. 18, Ex. D, Certificates of Merger from Illinois and New Jersey; *see* Murphy Decl. at ¶¶ 6-10.)

Because most or all of the events giving rise to Relator's marking claims, including the manufacturing, packaging, marketing, and advertising of the products in question, occurred either in Illinois or New Jersey, the Court finds that this factor weighs in favor of transfer.

3. **Conveniences of the Parties and Witnesses**

The conveniences of witnesses is one of the most important factors in determining whether to grant a change of venue under 28 U.S.C. § 1404(a). *Phelps*, 2008 WL 5705574, at *2. Moreover, the residence of key witnesses is the critical consideration. *Id.* Defendant identifies seven witnesses who have knowledge regarding the decisions to mark or remove patents from the products in question, (Doc. No. 15-1 at 3, Defendant's Amended Initial Disclosures), or who have testimonial knowledge relating to the unit sales, gross profits and net profits for these products. (Doc. No. 15-1 at 3.) These witnesses all reside in either Illinois or New Jersey. (Defendant's Amended Initial Disclosures; Hardy Decl. at ¶¶ 10-14.) Further, Defendant offers evidence that those witnesses that reside in New Jersey regularly travel to Rust-Oleum's headquarters in Vernon Hills, Illinois as part of their job responsibilities.[6] (Defendant's Amended Initial Disclosures; Hardy Decl. at ¶¶ 10-14.)

---

[6] Relator argues that the fact that these employees travel between Illinois and New Jersey for business demonstrates that they may just as easily travel to Ohio. Relator, however, fails to remember that the question here is the *convenience* of the witnesses. While it would be convenient for these witnesses to coordinate their travels so that their business obligations in Illinois could coincide with their participation in litigation in Illinois, having no business obligations in Ohio, the same cannot be said for Ohio. Moreover, because "virtually all of the documents" relating to the events giving rise to this litigation are located in Illinois (*see* Hardy Decl. at ¶ 17), New Jersey based witnesses would be able to access these documents, if necessary, while they were participating in this litigation if it were held in Illinois. Again, an Ohio venue would not afford the same opportunity.

10

In contrast, Kairos indentifies six Ohio witnesses, five of whom are current or former attorneys with the law firm of Calfee, Halter & Griswold, LLP (Rust-Oleum's counsel). (Doc. No. 12, Relator's Initial Disclosures.) Defendant suggests that these witnesses would be testifying to uncontroverted facts relating to their representation of Zinsser Company in a prior lawsuit for infringement of the '223 Patent. Kairos does not dispute that they would be called for this limited purpose, nor does it refute Defendant's characterization of these potential witnesses as "ancillary." (*See* Doc. No. 15-1 at 12.)

Since all of the key witnesses reside in either New Jersey or Illinois, this factor weighs in favor of transfer.

"Assessing the convenience of the parties, on the other hand, requires consideration of 'their respective residence and abilities to bear the expense of trial in a particular forum.'" *Simonian v. Hunter Fan Co.*, 2010 U.S. Dist. LEXIS 107766, *10 (N.D. Ill. Oct. 7, 2010) (quoting *Von Holdt v. Husky Injection Molding Sys.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995)). See *Phelps*, 2008 WL 5705574, at *2. "If the transfer of venue would serve merely to shift the inconvenience from one party to another, transfer is improper." *Phelps*, 2008 WL 5705574, at *2 (citing *Apex Sales Agency v. Phoenix Sintered Metals, Inc.*, 2006 WL 3022987, *2 (N.D. Ohio Oct. 23, 2006)).

It is clear that each party would be inconvenienced by litigating in the other's choice of forum. *See Heathcote Holdings Corp. v. Leapfrog, Enters.*, 2010 U.S. Dist. LEXIS 136749, *7 (N.D. Ill. Dec. 27, 2010). Kairos resides in Ohio. Defendant

resides in Illinois.[7] Kairos asserts that litigating this case in Illinois or New Jersey will greatly increase its costs, and states that a transfer of venue would confer a greater financial hardship on it because its financial means are much less than that of Defendant. Similar arguments have been rejected by previous courts, noting that a plaintiff "cannot newly incorporate for the sole purpose of pursuing [marking actions] and plead a poverty-basis for forum preference under the 'convenience of the parties' factors."[8] *FLFMC*, 2010 WL 3155160, at *2. *See Unique Prods. Solutions*, Case No. 5:10CV383 at *3. As a result, this factor does not strongly favor either side. *See Heathcote*, 2010 U.S. Dist. LEXIS 136749, at *7 ("Defendant, though it apparently has more resources, also has more people that would be inconvenienced by traveling here.")

    4.    **Access to Sources of Proof**

Defendant notes that "[v]irtually all of the documents in Rust-Oleum's possession, custody or control concerning the Paper Tiger, DIF Wall Paper Stripper and JOMAX products are either in Illinois or New Jersey." (Hardy Decl. at ¶ 17.) This includes documents relating to Defendant's decision to mark the Paper Tiger, DIF Wall Stripper and JOMAX products with the patent numbers; Defendant's decision to remove the patent numbers from the products at issue; and documents concerning the sales and

---

[7] Again, Relator relies, in part, on the fact that Defendant's parent corporation resides in Medina, Ohio to argue that Defendant truly resides in Ohio. The location of a parent corporation is irrelevant to the inquiry of the convenience of the parties, especially here where there is absolutely no evidence that the parent corporation was involved in any of the decisions relative to the marking of Defendant's products.

[8] Kairos also attempts to use the fact that Defendant sells products in the Northern District of Ohio and can arguably be "found" in this judicial district to support the argument that it is a "resident" of Ohio for purposes of the residence of the party factor under 28 U.S.C. § 1404(a). The fact that venue is proper in Ohio, and that this action obviously was properly brought in this judicial district, does not support a finding that Defendant's residence is Ohio for purposes of the 28 U.S.C. § 1404(a) residency analysis for determining the superior venue in a motion to transfer venue.

profitability of the products at issue. (Hardy Decl. at ¶¶ 17-18.) As set forth above, the same holds true for the key witnesses.[9]

Nonetheless, "[w]ith technological advances in document storage and retrieval, transporting documents does not generally create a burden." *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007). Thus, this factor tips slightly in favor of transfer. *See, e.g., Seely*, 2010 U.S. Dist. LEXIS 137625, at *21.

5.     **Familiarity with Applicable Law**

The law giving rise to Kairos's marking claim is federal. The Northern District of Illinois and the District of New Jersey are just as familiar with the relevant law as the Northern District of Ohio. This factor, therefore, has no affect on the choice of venue. *See Just Intellectuals*, 2010 U.S. Dist. LEXIS 130900, at *12.

6.     **Speed at which the Case will Proceed to Trial**

Kairos argues that current statistical data demonstrates that the Northern District of Ohio can more expeditiously administer its cases. It notes that in 2009, the Northern District of Ohio had 5,972 cases filed and the average length of time between filing and trial (for civil cases) was 17 months. In contrast, the Northern District of Illinois had 9,294 cases filed and an average length of time between filing and trial was 27.8 months, while the District of New Jersey had 8,003 cases filed and an average length of time between filing and trial of 37.3 months. (Doc. No. 17 at 12 (citing 2009 Court statistics)).[10]

---

[9]Kairos notes that "Defendant also admits that there are, in fact, several witnesses located in Ohio." (Doc. No. 17 at 9, citing Defendant's Motion at 5.) As noted above, these potential Ohio "ancillary" witnesses, the majority are present and former counsel of Zinsser, are not key witnesses because their testimony would be limited to uncontroverted facts regarding prior patent representation--a fact not disputed by Kairos.
[10]*See generally* http://uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx (August 2010).

13

Kairos neglects to take into account, however, the fact that the average docket of pending cases per judge in 2009 was higher in the Northern District of Ohio (488) than it was in the Northern District of Illinois (411) or the District of New Jersey (404). And while Kairos is correct that the average case in this District goes to trial several months sooner than the average case in either the Northern District of Illinois or the District of New Jersey, the average life span of a case from filing to disposition is around three months longer in this District than in either of the two proposed districts.[11] The Court finds that these facts favor neither transfer nor retention by this Court.

7. **Local Interest**

Kairos suggests that Ohio has an interest in this matter because Defendant's parent corporation is located in Medina, Ohio. (Doc. No. 17 at 12.) As the Court has previously observed, however, RPM played no role in any of the decisions or events which give rise to this litigation. Because Ohio has no significant connection to the underlying facts, the interest of justice would be better served by transferring the action to one of the two districts where the material events occurred. *See, e.g., Zojo Solutions*, 2010 U.S. Dist. LEXIS 112370, at *10.

In sum, Defendant has met its burden of demonstrating that either the Northern District of Illinois or the District of New Jersey would clearly be more convenient. The situs of material events, the relative ease of access to sources of proof, and the convenience of witnesses weigh heavily in favor of transfer. The location of most of the relevant evidence in Illinois also favors transfer. The remaining factors either weigh slightly against transfer or are neutral with respect to this decision.

---

[11] *See generally* http://uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx (August 2010.)

14

Because Defendant's headquarters are located in Illinois, and because most of the relevant documents and witnesses are in Illinois, the Court finds that Illinois is the most convenient forum and would be superior to New Jersey.

**Conclusion**

Therefore, Defendant's motion to transfer the case is GRANTED. The matter is hereby TRANSFERRED to the District Court for the Northern District of Illinois.

**IT IS SO ORDERED**.

Dated: January 14, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**